COMMONWEALTH vs. ROBERT E. MCCLARY, JR.

No. 90-P-1564.

Bristol. December 9, 1991. - December 11, 1992.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

*Constitutional Law*, Admissions and confessions. *Practice, Criminal*, Fair trial, Comment by prosecutor. *Controlled Substances*.

There was no merit to a criminal defendant's claims that the prosecutor impermissibly questioned him at trial and commented in his closing argument to the jury about his post-Miranda silence, using that silence to impeach the defendant's exculpatory testimony, where the evidence showed that the defendant had not invoked his right to remain silent after receiving his Miranda warnings, but rather answered questions from a police officer concerning the crimes for which he had been arrested, thus permitting the prosecutor to alert the jury to possible flaws in the defendant's testimony. [684-686]

At the trial of an indictment charging trafficking in cocaine, a guilty verdict was warranted on the evidence, including evidence that a large amount of cocaine, empty plastic bags with cocaine residue, scales, and other drug paraphernalia were found in places over which the defendant exerted control. [687]

INDICTMENT found and returned in the Superior Court Department on March 16, 1988.

The case was tried before *John M. Xifaras*, J., and a motion for a new trial was heard by him.

*Robert E. McClary, Jr.*, pro se.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A jury convicted the defendant of trafficking in cocaine and of possession of marijuana with intent to distribute. The latter conviction was placed on file. The defendant filed a timely notice of appeal from the conviction of trafficking in cocaine. He subsequently filed a pro se motion for a new trial on both convictions, claiming that he had received

ineffective assistance of counsel. The motion was denied without a hearing, and the defendant appealed.

On appeal, the defendant claims, among other things, that the prosecutor impermissibly questioned him about his post-Miranda silence and also commented on it in his closing argument to the jury. The issue arose in the following manner.

On March 4, 1988, at 2:00 P.M., Somerset police officers executed a search warrant at a home where the defendant lived with his grandmother. The police seized the following evidence from the defendant's bedroom and from a second room used by the defendant as a weight room: a manila envelope containing ten bags of cocaine later determined to weigh in excess of 279 grams, a triple beam scale found in the closet, a second scale under the bed, two bags of marijuana, a THC extractor, and various drug paraphernalia, including three empty plastic bags containing cocaine residue. The empty bags with the residue were found in the closet of the defendant's bedroom.

Detective O'Neill, who was participating in the search, telephoned the defendant at work and informed him that he was at the defendant's home with a search warrant. The defendant said, "You're wasting your time, you're not going to find anything." The detective told him that they had already discovered three-quarters of a pound of cocaine and three pounds of marijuana. The defendant replied, "Oh, shit." He then told the detective he would leave work and return home.

Upon the defendant's arrival at his home, he was arrested and advised of his Miranda rights. The defendant acknowledged that he understood them. At trial, the arresting officer was asked without objection, "[W]hat was the conversation that took place with [the defendant] at that time?" He responded:

> "I questioned him about the drugs, the cocaine and the marijuana, at which point he said that he didn't want to say too much. He didn't want to implicate himself too much, but that, as I recall, he stated, 'You found all the drugs that I've got here. This is it. This is all the drugs. You're wasting your time if you look any further.' "

The police officer also testified that the defendant was asked about a cooking device found by the police, and the defendant told them that "he had purchased it through a magazine approximately eight years before and that it was used for extracting THC from marijuana." The defendant did not object to the officer's testimony, which constituted the only evidence concerning the defendant's statements to the police after he had received his Miranda warnings.

After the Commonwealth rested, the defendant testified in his own behalf. He stated that the marijuana and other associated drug paraphernalia found in his room belonged to him. The marijuana was for his personal use and "possible resale." The defendant denied, however, that the cocaine belonged to him. He testified that the cocaine belonged to a friend, Richard Landry, and that he (the defendant) was holding it for Landry.

According to the defendant, on the morning of the day of the search, Landry came over to the defendant's house and asked to use the defendant's scale to weigh the cocaine which Landry had brought with him. Landry then asked the defendant if he could leave the cocaine at the defendant's home until later that evening. The defendant agreed to Landry's request, and Landry put the cocaine behind a dresser and left bags and cocaine-related material in the closet. The defendant testified that he never touched the cocaine, had no financial interest in it, and had no business relationship with Landry.[1]

On recross-examination, the defendant admitted that he had sold marijuana, varying from a fraction of an ounce to a pound, on an irregular basis over a period of ten years. He again denied that the cocaine belonged to him.

After a short redirect examination, the prosecutor asked the following questions on recross-examination:

---

[1]The defendant testified that Landry put up the money for his bail. Landry did not testify at the trial, and the Commonwealth made no comment on his failure to testify.

THE PROSECUTOR: "Incidentally, when the police talked to you on March 4th of 1988, you never mentioned one word about Richard Landry, did you?"

DEFENSE COUNSEL: "Objection."

THE COURT: "Sustained."

THE PROSECUTOR: "Well, the police asked you about —"

DEFENSE COUNSEL: "Objection."

THE COURT: "Sustained. Outside the scope of the redirect."

THE PROSECUTOR: "The name Mr. Landry came up again."

DEFENSE COUNSEL: "No speeches. I object to the speeches."

THE COURT: "You may ask a question. Not that one."

THE PROSECUTOR: "*Did you ever have a discussion with the police on March 4th of 1988 about whose cocaine that was?*" (Emphasis added.)

DEFENSE COUNSEL: "Objection."

THE COURT: "Overruled."

DEFENDANT: "*No*" (emphasis added).

During his closing argument, the prosecutor told the jury the following:

"He wants you to believe that he was just holding, just holding this large amount of cocaine for someone else. This astute businessman just holding all this cocaine for someone else. He's admitting to possessing it for somebody, but he doesn't want to go too far. He

doesn't want to go too far. He's just being a nice guy, holding three quarters of a pound of cocaine for someone else; *and isn't it interesting that when the question of ownership with the police came out on the day he was arrested, nothing [was] said about that. Richard Landry's name doesn't come up on March 4th of 1988.*" (Emphasis added.)

Defense counsel stated, "For the record, I object to this." The judge directed, "Continue with your argument. I'll resolve the issue."

After the judge instructed the jury, he invited counsel to sidebar to ascertain whether he had overlooked any instructions. The following took place:

> DEFENSE COUNSEL: "Defendant objects to that portion of your honor's charge which relates both to the objection I made of questions asked of the defendant, my objection during the course of counsel's argument on behalf of the government to the jury; and it has to do with Doyle against Ohio in which the prosecutor is never permitted to ask a man about why he didn't answer some further question; in this case why he didn't mention Landry after he has invoked under Miranda against Arizona. Your honor gave a partial instruction on the voluntariness of the confession, but I think the jury certainly should have any curative instruction at this point to solve the problem; but I wanted to note what my objection was then and is now with respect to that portion of the charge."

> THE COURT: "I could instruct them that the Commonwealth must advise them — he was advised of Miranda."

> DEFENSE COUNSEL: "Right."

> THE COURT: "He made a statement."

> DEFENSE COUNSEL: "Right."

THE COURT: "He made one over the phone, not custodial. When he came home later, they Mirandized him, and he made a statement."

DEFENSE COUNSEL: "*And then he stopped*" (emphasis added).

THE COURT: "*I assume he stopped*" (emphasis added).

DEFENSE COUNSEL: "The Commonwealth is not thereafter permitted to ask him —"

THE COURT: "That's correct."

DEFENSE COUNSEL: "— why didn't you say this and why didn't you say that. He did that, and he also argued it. I don't know how it's correctable at this point because that is inevitably impressed upon the minds of the jury."

THE COURT: "I didn't see it in that manner. If you want me to, I will instruct them that he was Mirandized; Miranda includes the following; that after being Mirandized one can make a statement; or after being Mirandized you can stop at any time; and they're not to draw any adverse inference one way or the other; or I can leave it alone."

DEFENSE COUNSEL: "What I'm looking for is for you to instruct the jury that the defendant's failure to mention Landry at the time he was questioned was not — first, was not properly asked; and secondly, should not be a consideration for the jury."

THE COURT: "Because he has a right to remain silent basically. What is your position?"

THE PROSECUTOR: "Well, I object if you're going to instruct it was not properly asked."

THE COURT: "No. I'm going to say defendant's failure to mention Landry is within his right. He has a right to remain silent and say nothing. I can tell them that. I may be highlighting that; but if you want me to, . . . I'll give it."

Defense counsel declined the offer of a curative instruction, claiming that it would not cure the error. On appeal, the defendant argues that, by questioning the defendant about his post-Miranda silence and making comments about it, the prosecutor violated *Doyle* v. *Ohio*, 426 U.S. 610 (1976).

In *Doyle* v. *Ohio*, 426 U.S. at 619, the United States Supreme Court held that the due process clause forbids the use by the prosecution of a defendant's post-Miranda silence for the purpose of impeaching an exculpatory story advanced at trial by a defendant.[2] Also see *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694-698 (1983); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 5-8 (1980). Here, the defendant's claim, similar to the defendants' contentions in *Doyle* v. *Ohio*, is that he remained silent after receiving his Miranda warnings

---

[2]In *Doyle* v. *Ohio, supra,* the two defendants did not after receiving Miranda warnings make any statements concerning the crime for which they were arrested. At trial, both defendants testified that they had been framed. On cross-examination, the prosecutor asked each defendant why, upon his arrest, he had not told the police of the frame-up story. In ruling that the prosecutor had committed reversible error, the Court stated, "Silence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Doyle* v. *Ohio,* at 617-618.

Subsequent Supreme Court decisions have been careful to limit the principle enunciated in *Doyle* v. *Ohio, supra,* to the facts of that case. See *Jenkins* v. *Anderson,* 447 U.S. 231, 240 (1980)(permissible to impeach defendant's testimony that he acted in self-defense by defendant's prearrest silence in not reporting incident for at least two weeks); *Fletcher* v. *Weir,* 455 U.S. 603 (1982)(due process not violated by impeachment by postarrest silence not preceded by Miranda warnings).

and that the prosecutor used that silence to impeach his exculpatory testimony.

The problem with the defendant's claim is that the evidence shows that he did not remain silent after he received his Miranda warnings but rather answered the officer's questions concerning the crimes for which he had been arrested. There was no evidence offered either by way of a pretrial suppression hearing or at a voir dire at trial that the defendant, although answering some questions, had properly invoked his right to silence.[3] When a defendant does not invoke his right to silence but answers questions concerning the crime for which he was arrested, the prosecutor may, by questioning the defendant and by comment to the jury, point out the differences between the defendant's trial testimony and his pretrial statements. *Commonwealth v. Sherick*, 401 Mass. 302, 305 (1987). See also *Anderson v. Charles*, 447 U.S. 404 (1980).

Further, it has been held that, if a defendant does not elect to remain silent but speaks to the police about matters concerning the crime for which he has been arrested, the prosecutor may ask the defendant about any *omission* from his post-Miranda statement which is at variance with his trial testimony.[4] *Commonwealth v. Lavalley*, 410 Mass. 641, 648-650 (1991) (the failure of defendant to tell police in his post-Miranda statement that victim had made sexual advances, which the defendant testified to at trial, could be considered as evidence of consciousness of guilt); *Commonwealth v. Martino*, 412 Mass. 267, 282-284 (1992) (prosecutor was en-

---

[3]We note that the judge in his colloquy with defense counsel after the prosecutor's closing argument *assumed* that the defendant had invoked his right to remain silent. We also note that the first reference by defense counsel to *Doyle* v. *Ohio, supra*, came during that same colloquy and that defense counsel did not mention that case as the ground for his objection to the questioning by the prosecutor on the subject.

[4]If a defendant speaks after being advised of his Miranda rights, there is one omission in his statement that can never be referred to by the prosecutor. A prosecutor cannot comment on the defendant's failure to "spontaneously volunteer that he was innocent." *Commonwealth* v. *Haas*, 373 Mass. 545, 558-559 (1977), *S. C.*, 398 Mass. 806 (1986). That was not the situation here.

titled to comment on an omission from defendant's post-Miranda statement which was at variance with defendant's trial testimony). In accord is *United States* v. *Goldman*, 563 F.2d 501, 503 (1st Cir. 1977) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was not a case where the government commented upon . . . a prior exercise of rights. The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them." [quoting from *Vitali* v. *United States*, 383 F.2d 121, 123 (1st Cir. 1967)]).

Here, the key to admitting in evidence the defendant's pretrial omission in his statement to the police is that there was *no* evidence of the defendant's silence in the face of post-arrest post-Miranda questioning. *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 303 (1992). Rather, the evidence indicates that the defendant waived his Miranda rights and responded to police questioning. Therefore, it was not improper for the prosecutor to question the defendant and comment to the jury on the failure of the defendant to mention Landry's ownership of the cocaine.[5]

In sum, the prosecutor was not invading the defendant's right to remain silent after he received Miranda warnings. Rather, the defendant had not remained silent, and the prosecutor was permitted to alert the jury to possible flaws in the defendant's testimony. There was no error.[6]

---

[5]Once the evidence of the omission in his pretrial statement was admitted, the defendant, of course, "could explain any elision or inaccuracy in his statements to the police as being due to his disturbed state of mind or other causes." *Commonwealth* v. *Seit*, 373 Mass. 83, 93 n.10 (1977). He did not do so in this case.

[6]The Commonwealth, in its brief, states that there was a violation of *Doyle* v. *Ohio, supra,* but argues that it was harmless error. The Commonwealth's "admission of error" does not relieve us of our appellate function of determining whether error was committed. *Commonwealth* v. *Williams,* 19 Mass. App. Ct. 915, 916 (1984). *Commonwealth* v. *Clark,* 23 Mass. App. Ct. 375, 379 (1987). We note that the Commonwealth's brief was written and the argument occurred before the decision of the Supreme Judicial Court in *Commonwealth* v. *Martino,* 412 Mass. at 282-284.

The defendant also claims that the trial judge committed error when he denied the defendant's motion for a required finding of not guilty on the charge of trafficking in cocaine. We disagree.

Here, a large amount of cocaine (in excess of 279 grams), empty plastic bags with cocaine residue, scales, and other drug paraphernalia were found in places over which the defendant exerted control. Possession of a large quantity of cocaine can support an inference that the defendant intended to sell cocaine. See *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984). There was no error in denying the defendant's motion.[7]

> *Judgment affirmed.*
>
> *Order denying motion for new trial affirmed.*

---

[7]A third issue raised on appeal by the defendant is a claim that the trial judge committed error when he denied the defendant's motion for a new trial. In that motion, the defendant, acting pro se, claimed that his trial counsel had failed to present in an effective manner the defendant's claim that the evidence obtained pursuant to the search warrant should be suppressed. Prior to trial, defense counsel had filed a motion to suppress the evidence seized pursuant to the search warrant and a motion requesting a *Franks* hearing (*Franks* v. *Delaware*, 438 U.S. 154 [1978]); the motions were supported by a seven-page memorandum and an affidavit. Those motions were denied by a Superior Court judge.

On the defendant's motion for a new trial, the trial judge ruled in a well thought-out memorandum that, based on the record, the defendant failed to show that his counsel was ineffective in regard to the pretrial hearing and that in all respects, his counsel met the standards enunciated in *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974). We agree with the motion judge for the reasons stated in his memorandum.