## Commonwealth *vs.* Michael S. Donovan.

No. 01-P-1760.

Worcester. January 13, 2003. - July 30, 2003.

Present: Jacobs, Kaplan, & Kafker, JJ.

*Rape. Indecent Assault and Battery. Threatening. Practice, Criminal,* Argument by prosecutor, Harmless error. *Constitutional Law,* Self-incrimination. *Police,* Self-incrimination. *Evidence,* Consciousness of guilt. *Error, Harmless.*

Discussion of the use of a criminal defendant's statements made to police after waiver of the defendant's Miranda rights against self-incrimination. [636-638]

At the trial of indictments charging rape, indecent assault and battery, and threatening to commit a crime, where the defendant did not testify, but where defense counsel continuously sought to demonstrate that the sexual conduct at issue was consensual, the prosecutor in his closing argument acted properly in commenting on the significant variance between the trial defense and statements that the defendant had made to the police after waiving his rights against incrimination, and the omissions therefrom, and in arguing that those statements, and the omissions therefrom, were false and misleading and therefore evidence of consciousness of guilt; under the circumstances, such comments did not impose an affirmative duty on the defendant to produce evidence or spontaneously volunteer his innocence. [638-640]

At a criminal trial at which the defendant did not testify, the prosecutor's comment on the defendant's statement, "It's not me," which the defendant made to police after waiving his rights against incrimination, was reasonable under the circumstances of the case [641-642]; moreover, even if the comment were error, the error was harmless beyond a reasonable doubt, given the overwhelming evidence of the defendant's guilt [642-643].

At a criminal trial, the prosecutor's appeal to the jury, on two occasions, that the victim, by not resisting the defendant, had saved her own life, was a proper comment on the evidence developed at trial; moreover, while the prosecutor's remark about more innocent times was not well-advised and would have been better omitted, the error did not prejudice the defendant, when viewed in the context of the entire closing argument, the substantial evidence against the defendant, and the judge's instructions that counsel's arguments were not evidence. [643-644]

Indictments found and returned in the Superior Court Department on March 12, 1999.

The case was tried before *Francis R. Fecteau*, J.

*Eric S. Brandt*, Committee for Public Counsel Services, for the defendant.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Michael S. Donovan, was convicted of multiple counts of aggravated rape, indecent assault and battery, kidnapping, and threatening to commit a crime. He contends that aspects of the prosecutor's closing, which focused on the significant variance between his post-Miranda statements to the police and the defense theory at trial, constitute reversible error. The defendant, who did not testify at trial, particularly objects to the prosecutor's comments on (1) the defendant's statements, made to police officers, that "[i]t was not me," and that the defendant did not know anything about the incident; and (2) the defendant's failure to tell the officers that his sexual relations with the victim were consensual, which was the essence of his trial defense. He also alleges that the prosecutor made inflammatory appeals to the jury's sympathies. We affirm the convictions of aggravated rape, indecent assault and battery, and threatening to commit a crime.[1] Because the defendant had waived his Miranda rights, it was not improper for the prosecutor to identify the significant inconsistencies between his post-Miranda statements and the trial defense, and to comment on the fair inferences that could be drawn from such inconsistencies, including that the post-Miranda statements were false and evidence of consciousness of guilt.

*Background.* The Commonwealth produced ample evidence proving that the defendant had sexual relations with the sixteen year old victim, and the fact was not contested by the defendant at trial. The Commonwealth's evidence included DNA analysis of sperm found in the victim's underwear, and the victim's identification of the defendant's tattoos and jewelry, as well as objects found inside his pick-up truck, which he used to transport the victim to a remote area where the rape occurred.

---

[1]The Commonwealth concedes the correctness of the defendant's final contention regarding the necessity for reversal of the kidnapping charge because the charge is wholly included within the conviction of aggravated rape. We therefore vacate the kidnapping conviction. *Commonwealth* v. *Petrillo*, 50 Mass. App. Ct. 104, 111 (2000), cert. denied, 532 U.S. 1030 (2001).

The victim testified that she decided to take a walk at 11:00 P.M. on July 9, 1998, because it was "hot and stuffy" and she was bored. She testified that at the corner of Mechanic and Ninth Streets in Leominster, a man jumped out from behind some bushes, grabbed her, put a hunting knife to her throat, and told her, "Don't scream or I'll kill you." He then dragged her to a dark-colored pick-up truck that was parked at the corner, put her hands behind her back, and placed handcuffs on her wrists. He drove her to a remote, fenced-in location, told her to do what he said or he would kill her, and forced her to engage in a number of sexual acts which she testified were all without her consent. Afterwards, he told her that he knew where she lived and knew her family, and that if she did anything, he or his friends would go after her; he added that his friends "will be mad at me for not bringing you to them to share you." He drove her to the corner of Twelfth and Mechanic Streets, made further threats, and then took the key out of the truck's ignition and used a handcuff key on the key ring to remove the handcuffs.

When the victim got home, she was screaming and hysterical. She told her friend, at whose family's house she was living, that she had been handcuffed, kidnapped, and raped. The friend testified to the red marks around her wrists and her condition and statements. He called the police, who also observed the pressure marks on the victim's wrists and took her statements regarding the rape. The victim was taken to Leominster Hospital. The treating physician testified to the victim complaining of pain and injury to her wrists, and the medical records introduced at trial indicated abrasions to the wrists. Hospital personnel examined the victim and collected evidence for a sexual assault kit.

Based on the victim's description, the police delivered a composite sketch of the suspect to the press. Stories appeared in the local newspaper. On July 15, 1998, police officers went to the defendant's residence to look for the pick-up truck the victim described. They spoke to the defendant and his wife and asked the defendant to come to the police station to discuss the case. He agreed. After the defendant and his wife left for the station with some of the officers, other officers went to the back

of the defendant's house and saw a black pick-up truck. When they peered inside they noticed an air freshener labeled "Tazmanian [*sic*] devil" that matched the victim's description. The truck also differed from that described by the victim in certain respects. There was no light on top of it as she had reported, but there was a round rust spot as well as other indications that something had been removed. Also missing were the citizens band (CB) radio and stuffed animals the victim had described inside the truck.

At the station, the police officers advised the defendant of his Miranda rights, and he signed a form waiving his rights. He also indicated verbally that he understood his rights and agreed to speak to the officers. The officers asked whether he was familiar with a sexual assault case they briefly described. The defendant immediately responded that it was not him. The police officers then asked him specific questions, including, "Are you familiar with or have you heard about the case in question?" He answered, "No, I have no idea what you're talking about." Next, he was asked a series of questions about knives, including whether he owned hunting knives, to which he replied, "No." The officers then asked him questions about tattoos on his arms. He acknowledged having the tattoos, and allowed the officers to photograph them. He was asked where he worked and whether he played pool on the night in question, to which he answered, "Yes."[2] He was asked when he left the pool hall and he said, "I stayed after playing pool talking to the bartender until 12:30, one o'clock."[3] He said he went home after leaving the pool hall. He was then advised that he and his vehicle fit the description given by the victim of the attack and he immediately stated, "It's not me. I don't know what you're talking about. This is crazy."

Following the interview, the defendant was arrested. Warrants obtained to search the defendant's home and truck were executed on July 16, 1998. In his home, the police found various items described by the victim, including a CB radio with brackets and screws, an orange plow light, and a hunting knife.

---

[2]The victim described a pool cue holder in the truck.

[3]The bartender testified at trial that the defendant left between 10:30 and 11:00 P.M.

The defendant's wife also gave the officers a key ring that included a handcuff key. The victim testified that the key ring looked like that used by the assailant. No handcuffs were found. The search of the house also produced a newspaper dated July 15, 1998, which included the composite picture the police had provided to the press. A mustache had been drawn on the composite. The defendant's booking photograph showed that when arrested, he had a small mustache.

The defendant did not testify at trial. The sole defense, as emphasized by defense counsel in opening and closing, was consent. The issue of consent was raised through cross-examination of the Commonwealth's witnesses, particularly the victim, whose credibility and motives were impugned. Defense counsel also elicited testimony regarding the lack of bruises or red marks appearing in photographs taken of the victim's wrists.

*Discussion.* a. *The prosecutor's closing.* The defendant challenges the propriety of the following portion of the prosecutor's closing argument:

> "He went to the police department. You heard from [police officers] that [the defendant] at that time had the opportunity to tell them whatever he wanted to. They gave him plenty of time. If this were consensual, ladies and gentlemen, this is the time to say so. . . . If you are looking for the truth, you are not going to find it in what he told the police.

> "What did he tell them? [The police] advised him that they were investigating a rape and a kidnapping in Sterling and Leominster respectively, and he immediately said to them, 'It's not me.' That's an untruth. It's a lie.

> "He was asked if he knew anything about the incident. He said no. Well, we now know that's a lie because in his house, in a room with his personal papers in it, the police found [a newspaper article] with a composite and a little mustache drawn on it . . . [so] he lied to them about that."

b. *Sufficiency of objections.* The Commonwealth contends, first, that any error was not sufficiently preserved, and that we should decline to address the merits of the defendant's arguments for this reason. Although the defendant did not properly

object to the officers' trial testimony, defense counsel objected at the end of the prosecutor's closing argument. At that point, defense counsel told the judge she took issue with the prosecutor "commenting on the defendant's statement, calling it false, a lie, because [the defendant] said he did not commit a rape and kidnapping, that's up to the jury to make that determination." We assume, without deciding, that defense counsel's statements "fairly alerted the trial judge" to her objection to the prosecutor's comments on the defendant's denials and consider the question as if it were properly preserved. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 636 (1997); Mass.R. Crim.P. 22, 378 Mass. 892 (1979). As appellate defense counsel correctly conceded, however, defense counsel did not object to the prosecutor's comment on the defendant's failure to mention consent; we therefore consider this issue only to determine whether error, if any, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 (2002).

c. *Waiver of Miranda rights and use of post-Miranda statements and omissions.* The Commonwealth has met its burden of showing that the defendant waived his Miranda rights against self-incrimination when he made the comments introduced by the police officers at trial and repeated by the prosecutor in closing. See *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 397, cert. denied, 516 U.S. 861 (1995); *Commonwealth* v. *Senior*, 433 Mass. 453, 462-463 (2001); *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 685-686 (1992), cert. denied, 510 U.S. 975 (1993). See also *United States* v. *Goldman*, 563 F.2d 501, 503 (1st Cir. 1977), cert. denied, 434 U.S. 1067 (1978). There was no evidence that the defendant ever invoked his right to remain silent during his dialogue with police officers.[4] Rather, the evidence unequivocally demonstrates a waiver of his privilege against self-incrimination.

"Thus, the proscription of *Doyle* [v. *Ohio*, 426 U.S. 610, 617,

---

[4]Where a defendant has waived his right to remain silent, the failure to answer a particular question or fill in gaps of information during the police interview is not the exercise of the right to remain silent. See *Commonwealth* v. *Senior*, 433 Mass. at 462-463; *Commonwealth* v. *Sicari*, 434 Mass. 732, 746 (2001), cert. denied, 534 U.S. 1142 (2002). See also *United States* v. *Goldman*, 563 F.2d at 503.

619 (1976),] with respect to a defendant's *silence* does not preclude prosecutorial comment on express post-Miranda statements; the warning is that 'any statement that you make can be used against you.' " *Commonwealth* v. *Waite*, 422 Mass. 792, 800 (1996) (emphasis in original). See *Commonwealth* v. *Sherick*, 401 Mass. 302, 305 (1987); *Commonwealth* v. *Senior*, 433 Mass. at 463. See also *Anderson* v. *Charles*, 447 U.S. 404, 408 (1980). Similarly, if a defendant does not elect to remain silent "but speaks to the police about matters concerning the crime for which he has been arrested, the prosecutor may ask the defendant about any *omission* from his post-Miranda statement which is at variance with his trial testimony." *Commonwealth* v. *McClary*, 33 Mass. App. Ct. at 685 (emphasis in original). As a result, at least where the defendant testifies at trial, prosecutorial comments upon post-Miranda statements and omissions have been found proper in a number of cases on a variety of different grounds, including that the statements evidence consciousness of guilt, or constitute admissions, or prior inconsistent statements.[5]

There are fewer cases considering the treatment of omissions where the defendant does not testify at trial, and the omission cannot therefore be considered part of a prior inconsistent statement. Nevertheless, in *Commonwealth* v. *Thompson*, 431 Mass. 108, 118, cert. denied, 531 U.S. 864 (2000), the court found that where "[t]he defendant did not invoke at any time his right to stop the questioning and be silent," and instead gave

---

[5]See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 649-650 (1991) (in rape case where defendant's trial testimony and statements to police differed, court allowed prosecutor to comment on defendant's failure to mention in his earlier statements that victim had made sexual advances towards him); *Commonwealth* v. *Martino*, 412 Mass. 267, 283-284 (1992) ("In view of the detail of the statement, the defendant's omissions could be found to be significant and the prosecution was entitled to comment on them"); *Commonwealth* v. *Rivera*, 425 Mass. at 639 ("A defendant who takes the witness stand . . . is subject to the ordinary rigors of proper cross-examination, including questioning about prior inconsistent statements voluntarily made"); *Commonwealth* v. *Fowler*, 431 Mass. 30, 37 n.10 (2000) (permissible to cross-examine defendant about what he neglected to tell officers when his post-Miranda statements varied from his trial testimony). See also *United States* v. *Goldman*, 563 F.2d at 503, quoting from *Vitali* v. *United States*, 383 F.2d 121, 123 (1st Cir. 1967) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits. . .").

"a far-ranging statement over several hours[, i]t was . . . proper for the prosecutor to comment on the fact that the defendant did not ask appropriate questions." In that case, the defendant did not inquire into the manner of his wife's death or the well-being of his daughter when questioned about his wife's murder. *Ibid.*

Similarly, in *Commonwealth* v. *Snell*, 428 Mass. 766, 772, cert. denied, 527 U.S. 1010 (1999), the court allowed a prosecutor in opening argument to comment that the defendant, who had waived his Miranda rights, "said nothing except, 'I was in Connecticut,' " when confronted by the police and questioned regarding his wife's murder. There, the court found that the defendant's statements, "in which the defendant sought to deflect attention from himself, and perhaps establish an alibi" and his "failure to inquire about his wife[] were appropriate matters for comment and exploration." *Id.* at 773. See *Commonwealth* v. *Hunt*, 50 Mass. App. Ct. 565, 568 (2000) (misleading prearrest statements "may be properly admitted as evidence of consciousness of guilt where there is other evidence tending to prove the falsity of the statements") (citation omitted). See also *Bradley* v. *Meachum*, 918 F.2d 338, 343 (2d Cir. 1990), cert. denied, 501 U.S. 1221 (1991) (not improper to comment on omission in post-Miranda statement where defendant did not testify at trial).

d. *The statements at issue.* In the instant case, the Commonwealth identified inconsistencies between the defense theory at trial and the defendant's post-Miranda statements to the police. The defendant did not testify, but defense counsel, through cross-examination of the victim and her opening and closing remarks, continuously sought to demonstrate that the sexual conduct at issue was consensual. Consent was the entire thrust of the defense and therefore, without question, the tactic embraced by the defendant himself. Nevertheless, in his post-Miranda statements to the police, the defendant (1) said, "It's not me," and denied knowing anything about the events he was being questioned about; (2) described himself as playing pool and talking to a bartender during the relevant time period on the night in question; and (3) never mentioned consensual sex with the victim.

The defendant argues that it was not proper for the prosecu-

tor to comment on the statements or the omissions despite his waiver of Miranda rights. He contends that because the Commonwealth never asked if the victim consented, he had no obligation to "spontaneously volunteer" this information. See *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977), *S.C.*, 398 Mass. 806 (1986). He also contends that his denials were not inconsistent with his consent defense, and regardless, all denials of guilt are inadmissible when the defendant does not testify.

We conclude that it was not improper for the prosecutor to focus the jury's attention on the significant variance between the post-Miranda statement and the trial defense. The defendant had waived his Miranda rights and had chosen to speak. He was warned and understood that anything he said could and would be used against him. He denied any knowledge of the events in question and established the basis for an alibi that placed him at a bar, playing pool during the relevant time. See *Commonwealth* v. *Snell*, 428 Mass. at 773. The essence of his trial defense, consent, was different and absent from the post-Miranda statements. See generally *Commonwealth* v. *Lavalley*, 410 Mass. 644, 649-650 (1991); *Commonwealth* v. *McClary*, 33 Mass. App. Ct. at 686 (defendant in drug trafficking case omitted from post-Miranda statement that cocaine was left in his home by friend who was to pick it up later). The statements were extensive enough to make this absence conspicuous. See *Commonwealth* v. *Thompson*, 431 Mass. at 118. If the sexual assault the defendant was being accused of was actually a consensual encounter as he argued at trial, it was reasonable to infer that the "time to say so" was when the defendant made his statement to the police. It was not improper for the prosecutor to comment on this significant omission or how it reflected on the truthfulness of the statement or the theory of defense.[6]

Nor was it inappropriate to point out the inaccuracy of the defendant's statement that he did not know anything about the incident, and its inconsistency with a consent defense. The defense did not suggest at trial that he did not know anything about the incident, just that the sexual encounter was consensual. It was also reasonable to infer that the newspaper article found

---

[6]The judge gave a consciousness of guilt instruction to the jury.

at his house further belied his denial of any familiarity with the crime.[7]

In sum, in this context, based on the evidence at trial, it was reasonable for the prosecutor to infer and argue that the defendant's statements to the police, and the omissions therefrom, were false and misleading and therefore evidence of consciousness of guilt. See *Commonwealth* v. *Lavalley*, 410 Mass. at 649-650; *Commonwealth* v. *Mayne*, 38 Mass. App. Ct. 282, 284 (1995) ("it is well-settled that false statements made by a defendant are admissible to show consciousness of guilt"); *Commonwealth* v. *Hunt*, 50 Mass. App. Ct. at 568 ("Statements may be properly admitted as evidence of consciousness of guilt where there is other evidence tending to prove the falsity of the statements") (citation omitted).

The comments by the prosecutor did not impose an affirmative duty on the defendant to produce evidence or "spontaneously volunteer" his innocence. *Commonwealth* v. *Haas*, 373 Mass. at 559. Compare *Commonwealth* v. *Caputo*, 439 Mass. 153, 166 (2003) (prosecutor's comment "improperly placed burden on the defendant to produce evidence"). We hold only that the variance and inconsistency between the post-Miranda statements and the defense theory at trial are not off-limits to the prosecution even if the defendant does not testify. The defendant is not allowed to advance his own interests with impunity. See, e.g., *Commonwealth* v. *Rivera*, 425 Mass. at 638-640. See also *United States* v. *Goldman*, 563 F.2d at 503-504. Not providing a defendant with an unconditional right, after he has waived his Miranda rights, to tell the police investigating the incident something misleading and different from the defense at trial is not the same as requiring him to produce affirmative evidence.[8] See *Commonwealth* v. *Lavalley*, 410 Mass. at 649-650.

---

[7]As a result, the prosecutor's statement that "[i]t's a lie" was not improper.

[8]Even *Commonwealth* v. *Haas*, 373 Mass. at 559, the case relied on by the defendant, drew a distinction between allowing the prosecution to comment on "[i]nconsistencies between what the defendant told the police and what he testified to at trial" and asking "the jury to infer guilt from the mere fact that [the defendant] did not spontaneously volunteer that he was innocent." A similar distinction was made in *Commonwealth* v. *Thompson*, 431 Mass. at 118 ("the prosecutor . . . did not comment on the defendant's failure to

e. *Common law rule on denials.* The prosecutor's comment on the defendant's statement, "It's not me," raises some special considerations. The defendant argues that it is improper in all cases for the prosecutor to comment on denials of guilt when the defendant does not testify, even when Miranda rights have been waived. The defendant relies on the common law rule and reasoning in *Commonwealth* v. *Trefethen*, 157 Mass. 180, 199 (1892), in which the court held, "when the defendant denies generally that he is guilty, this statement cannot be shown to be false except by proving that he is guilty beyond a reasonable doubt, and then it is unnecessary." See *Commonwealth* v. *Nawn*, 394 Mass. 1, 4-5 (1985) ("if a defendant is charged with a crime and unequivocally denies it, that denial is not admissible in evidence"); *Commonwealth* v. *Waite*, 422 Mass. at 801 (referencing and applying the "long-standing [*Trefethen*] rule").

In the instant case, (1) we do not have a brief, unequivocal denial standing alone; (2) the defendant waived his right to remain silent and gave a misleading fact statement that varied from his defense at trial and sought "to deflect attention from himself, and perhaps establish an alibi," *Commonwealth* v. *Snell*, 428 Mass. at 773; and (3) the denials, as part and parcel of the defendant's more extensive dissembling statement, have a different meaning, and are being commented on by the Commonwealth for a different purpose than in *Trefethen*. "It's not me" can be shown to be incomplete and misleading separate and apart from the ultimate question of guilt or innocence.[9] It was reasonable for the prosecutor to argue that in this context the post-Miranda statement, "It's not me," meant something very different from "I am not guilty"; it meant, "I am not the

---

proclaim his innocence, but rather on his failure to ask appropriate questions that an innocent party would ordinarily ask"). See *Commonwealth* v. *Lavalley*, 410 Mass. at 649-650 (court allowed prosecutor to comment on statement in rape case where "prosecutor did not suggest to the jury that the defendant's failure to deny that he committed the crime was evidence of the defendant's guilt. Instead, the Commonwealth's contention was that, in light of the defendant's testimony during the trial, his failure to mention in his first statement to the police that he had been alone with the victim and that the victim had made sexual advances, constituted a false statement which demonstrated consciousness of guilt").

[9]It is similar, in this regard, to the statement, "I don't know what you are talking about."

person you should be questioning," which was not true given his later trial defense. We conclude that the *Trefethen* rule is inapplicable in these circumstances.

f. *Harmless error.* Even if it were somehow error for the prosecutor to reference the "[i]t's not me" statement, the error was harmless beyond a reasonable doubt given the overwhelming evidence of guilt. *Commonwealth* v. *Waite*, 422 Mass. at 801-802. That the defendant used force on the victim to cause her to submit to him was conclusively shown by (1) the victim's description of being ambushed by the defendant on a dark street; (2) her description of the defendant's use of a knife to make her enter his truck (which knife was found later in the defendant's possession); (3) her description of the defendant's use of handcuffs to restrain her in the truck and during the attack (a handcuff key was later found on the defendant's key ring, although the handcuffs themselves were not found)[10]; (4) her distraught state upon returning to her house; and (5) the marks on her wrists where she was injured by the handcuffs, which were observed by her friend to whom she reported the attack, by police officers who responded to the friend's call, and by hospital medical staff.[11] The defense theory that the sex act was consensual was also severely undermined by the introduction of the defendant's statements, later shown to be false, strongly suggesting an attempt to dissociate himself from the event. These were properly admitted as evidence of his consciousness of guilt.[12] *Commonwealth* v. *Lavalley*, 410 Mass. at 649-650. Finally, we note that defense counsel herself, on cross-examination of one of the police officers, reiterated the officer's direct testimony that the defendant told the officers, "It's not me," upon hearing the allegations. On review of the entire trial record, we conclude that the prosecutor's comment on "It's not

---

[10]The victim had also told police that he kept the handcuff key on his key ring.

[11]We accord only slight significance to the fact that the red marks do not appear in the photographs of the victim's wrists taken by the officer who responded to the call. The record provides no details on the nature or quality of the photographs.

[12]His changes to the exterior and interior of the truck, including the removal of the CB radio and the plow light, were further evidence of consciousness of guilt.

me," even if error, was harmless beyond a reasonable doubt. *Commonwealth* v. *Waite*, 422 Mass. at 802.

g. *Appeals to juror sympathies.* The defendant challenges the propriety of the prosecutor's suggestion to the jury, on two occasions, that the victim, by not resisting the defendant, and "not get[ting] him angry with her. . . . saved her own life that night." At a sidebar following the argument, defense counsel objected to the argument, labeling it "inflammatory." We conclude that the statement was a proper comment on evidence developed at trial. *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993). This evidence included the victim's testimony that the defendant ambushed her on the street at night, held a knife to her throat while verbally threatening to kill her, handcuffed her, and transported her against her will to the site of the attack. Following the rape, he threatened to kill her if she said anything. There was no error in the prosecutor's statement.

The prosecutor's second allegedly prejudicial remark, to which the defendant made no objection, was made in response to the defendant's suggestion that the victim left her house on the night of the attack looking for someone with whom to engage in sexual relations, in order to get revenge on her boyfriend, who she suspected was with another woman.[13] The prosecutor argued as follows: "Thirty, forty, fifty years ago, . . . people could walk freely at night. People could unlock their doors. People could open their doors without looking through peepholes and chains. Now, however, someone is blamed if they exercise their free will to take a walk." The prosecutor's remarks about more innocent times, when people could walk the streets at all hours without anyone questioning their motives, was not well-advised, and would have been better omitted. The error, however, when viewed in the context of the entire closing argument, the substantial evidence against the defendant,

---

[13]The defense attorney argued the following in closing:

"What would be the purpose . . . for a 16-year-old girl to leave a home at eleven o'clock at night, walk on a busy street? . . . Where did she go when she left that house? Who did she see? What did she do? . . . Did she try and get even with her boyfriend by going with another guy?"

and the judge's instructions that counsel's arguments were not evidence, did not prejudice the defendant. *Commonwealth* v. *Gaudette*, 56 Mass. App. Ct. 494, 500-501 (2002).

The judgments on the charges of aggravated rape, indecent assault and battery, and threatening to commit a crime are affirmed. The judgment on the kidnapping charge is reversed and the verdict thereon is set aside.

*So ordered.*