COMMONWEALTH *vs.* JOSUE RIVERA.

No. 03-P-1383.

Hampden. October 13, 2004. - February 8, 2005.

Present: GELINAS, SMITH, & GREEN, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Self-Defense. Evidence,* Self-defense, Admission by silence. *Practice, Criminal,* Argument by prosecutor.

At the trial of a criminal complaint charging the defendant with assault and battery by means of a dangerous weapon, the prosecutor improperly solicited testimony from a police detective regarding the defendant's failure in his post-Miranda statement to mention any potential eyewitnesses to the altercation in question, given that there was no indication that the detective had asked the defendant about the presence of witnesses to the event, or that the defendant had denied that there were any; when considered in conjunction with the prosecutor's improper argument in his closing that the testimony of one of the defense witnesses should be discounted because she did not call police at the time of the confrontation between the defendant and the complainant (in light of the absence of any testimony whether the witness had called police, or any foundation to have allowed inquiry into whether her failure to do so, if there was such a failure, supported an inference of recent fabrication), the cumulative effect of the errors was such as to prejudice the defendant on the central question of the credibility of the eyewitnesses to the attack. [861-865]

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on December 5, 2001.

The case was tried before *John M. Payne, Jr.,* J.

*Kathleen M. Ludwig* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

GREEN, J. At trial on a charge of assault and battery by means of a dangerous weapon, the defense attempted to establish that the defendant acted in self-defense to repel an attack by the much larger, albeit unarmed, complainant. A District Court jury of six heard conflicting accounts of the episode from prosecu-

tion and defense witnesses. On appeal, the defendant claims that errors of three types impermissibly bolstered the credibility of the prosecution's witnesses and tarnished the credibility of the defense. We conclude that the cumulative effect of the errors requires reversal of the judgment of conviction.

*Background.* The circumstances preceding the physical confrontation between the defendant and the complainant are largely undisputed. The defendant and the complainant knew each other fairly well; they had previously worked together, and they dated, and apparently lived with, two sisters.[1] What initially had been a cordial relationship had become strained; by December 4, 2001, the date of the alleged offense, the two were not on speaking terms.

On December 4, the defendant called the complainant's house and asked to speak to the complainant's girlfriend. The complainant answered the telephone, and the two exchanged hostile words.[2] Later that day, while out on an unrelated errand, the complainant drove to the defendant's house and honked his car's horn. By the time the defendant emerged from his house, the complainant was standing outside his car. The defendant weighed approximately 150 pounds; the complainant weighed approximately 260 pounds and was considerably taller than the defendant. A physical confrontation ensued, in which the defendant picked up a baseball bat he found lying on the ground and struck the complainant with it, inflicting injuries that required medical attention.

The defendant did not testify at trial but, supported by the testimony of two witnesses who stated that they saw the attack, argued that he acted in self-defense to fend off an attack initiated by the much larger complainant. The prosecution challenged the defense version of events. The defendant claims that the jury were swayed by various errors to discount the defense version of events and to assign credibility to the prosecution version.

---

[1]Though neither couple was married, each of the two protagonists referred to the other's girlfriend as his "sister-in law," and to the other as his girlfriend's "brother-in-law."

[2]The complainant testified that he hung up on the defendant after the defendant challenged him: "If you're so big and bad, why don't you come down?"

*Discussion.* The defendant raises three claims of error in his appeal: (1) a police officer was allowed to testify, over objection, that the defendant did not tell the officer about any eyewitnesses to the attack when the defendant gave his initial statement to police; (2) the prosecutor improperly referred to facts not in evidence during his closing argument, when he stated that one of the defense witnesses should not be believed because she did not call police to report the attack at the time it occurred; and (3) the prosecutor repeatedly vouched for the credibility of the complainant during the prosecutor's closing.[3] Though the comments the defendant characterizes as vouching were perhaps immoderate in their frequency, we are inclined to agree with the Commonwealth that they do not constitute grounds for reversal. The prosecutor in making those comments relied on evidence admitted at trial to argue why the complainant's version of events was more credible than the defense theory, rather than to assert independent personal knowledge of the complainant's credibility. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 391 (1997). The remaining two issues, however, are a different matter.

Detective James McGillicuddy of the Holyoke police interviewed the defendant following the confrontation between the defendant and the complainant. The detective advised the defendant of his Miranda rights, and the defendant does not claim that his election to speak to the detective thereafter was not voluntary. During the Commonwealth's direct examination of Detective McGillicuddy, the prosecutor posed the following question: "At any time, did he ever mention that he had witnesses that had seen the event?" Defense counsel objected, and a conference followed at the sidebar. Following the sidebar conference, the detective was allowed to testify that, during his interview of the defendant, the defendant did not mention any witnesses to the event. That was error.

The Commonwealth correctly observes that if a defendant continues to speak to police following administration of his

---

[3]The defendant asserts a separate claim that the trial judge improperly instructed the jury on the subject of the status of a baseball bat as a dangerous weapon. Our disposition of the defendant's other claims obviates any need to address the jury instruction question.

Miranda rights, a prosecutor may, by questioning the defendant and by comment to the jury, point out differences between the defendant's trial testimony and his pretrial statements. See *Commonwealth* v. *Guy*, 441 Mass. 96, 104 (2004); *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 685-686 (1992) (defendant's trial testimony that drugs were owned by another party impeached by his failure to make such assertion in his pretrial post-Miranda statement to police). Moreover, post-Miranda statements may be admitted in evidence even when the defendant does not testify (as happened here), where they are inconsistent with the theory of the defense at trial. See *Commonwealth* v. *Thompson*, 431 Mass. 108, 118, cert. denied, 531 U.S. 864 (2000); *Commonwealth* v. *Donovan*, 58 Mass. App. Ct. 631, 639 (2003). However, that is not the situation here. The defendant's failure to mention any potential eyewitnesses during his initial statement to police was not itself inconsistent with the theory of the defense at trial. Compare *Commonwealth* v. *Thompson*, *supra* at 118 (police officer allowed to testify that defendant did not ask appropriate questions about his daughter's condition that innocent person ordinarily would ask); *Commonwealth* v. *Donovan*, *supra* at 638-639 (defendant's post-Miranda statements denying knowledge of alleged rape and claiming to have been at bar playing pool admitted to impeach defense claim that alleged rape was consensual sex). There is no indication in the record that the detective asked the defendant about the presence of witnesses to the event, or that the defendant denied that there were any. The defendant certainly was under no burden spontaneously to volunteer potentially exculpatory information in his statement to police. See *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977), *S.C.*, 398 Mass. 806 (1986); *Commonwealth* v. *Martinez*, 34 Mass. App. Ct. 131, 132-133 (1993). Indeed, in the instant case, it is unclear whether the defendant necessarily would even have known of the existence or identities of potential third-party witnesses.[4]

Because the defendant's objection preserved his claim of er-

---

[4]One of the two defense witnesses observed the confrontation only briefly from her front porch before going back inside her apartment. The other witness stated that she was standing across the street from the defendant while both were waiting for their children's school bus; the complainant stood outside his car in the defendant's driveway, honking the car's horn and yelling

ror, we consider whether the record establishes "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 (2000), quoting from *Chapman* v. *California*, 386 U.S. 18, 24 (1967). Factors relevant to that inquiry include "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions." *Id.* at 660-661, quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983). Applying these factors, we observe that the central premise of the defense was its claim that the defendant acted in self-defense to repel an attack by a much larger man. That defense depended on the credibility of the two eyewitnesses who testified in support of the defense version of events. We also note that the Commonwealth introduced the issue at trial, and that there was no curative instruction given. Though the reference to the defendant's silence was isolated to the single question and answer described above, its effect in the trial as a whole must also be weighed in the context of the defendant's separate claims of improper argument by the prosecutor in his closing.

We agree with the defendant that it was improper for the prosecutor to argue in his closing that the testimony of one of the defense witnesses should be discounted because she did not call police at the time of the confrontation between the defendant and the complainant.[5] There was no testimony or other evidence on whether that witness called police, nor was

---

for the defendant. The defendant then walked to his driveway and the confrontation between the two men ensued. There was no evidence to establish that the defendant was aware of either witness's presence at the scene, or to illuminate how or when the witnesses came to the attention of the defense. Independent of any issue concerning the general admissibility of omissions from a defendant's post-Miranda statements to police, there was no foundation in the evidence to support an inference that the defendant's failure to identify potential witnesses in his initial statement to police was probative of any relevant issue.

[5]The prosecutor's comment that is the subject of the defendant's claim was as follows:

"She's concerned, she knows the defendant, [he] helps her husband out a little, here he is in a confrontation with this huge guy, two hundred

there any foundation to have allowed inquiry into whether her failure to do so (if there was such a failure) supported an inference of recent fabrication. See *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 296-297 (1981).

In assessing the significance of improper argument, we consider (1) whether defense counsel seasonably objected to the arguments at trial; (2) whether the judge's instructions mitigated the error; (3) whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters; (4) whether the jury would be able to sort out the excessive claims made by the prosecutor; and (5) whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant. See *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), and cases cited.

In the case before us, defense counsel seasonably objected to the prosecutor's argument that the witness's credibility should be discounted in light of her failure to call police to report the incident, and the judge refused counsel's request for a curative instruction. As we observed above, the credibility of the defense witnesses, and their account of the incident, went to the heart of the defense, and the Commonwealth's case depended largely on the jury's acceptance of the complainant's account rather than that given by the defense witnesses. Like the prosecutor's question about the defendant's "failure" to volunteer other witnesses to his alleged attack, the prosecutor's closing reference to the defense witness's "failure" to report the incident to police weighed heavily on the question of the credibility of the defense witnesses. Whether either the improper argument or the improper question would warrant reversal standing alone, we conclude that the cumulative effect of the errors was such as to

---

and sixty pounds, six-feet tall, he's pushing the guy. Does she pick up the phone and call the police? Does she do anything to try to help him out? Wouldn't you think she would?

"I mean, if it happened the way he said, where he's just an innocent guy, backing up, getting pushed, and she's so concerned about him, and this other guy's so big, if it happened that way and she saw it happen that way, don't you think she would have called the police?"

prejudice the defendant on the central question of the credibility of the eyewitnesses to the attack.

*Judgment reversed.*

*Verdict set aside.*