## COMMONWEALTH vs. JOVAN BURTS.

No. 05-P-309.

Suffolk. January 11, 2007. - April 17, 2007.

Present: McHugh, Smith, & Mills, JJ.

*Practice, Criminal,* Assistance of counsel, New trial, Argument by prosecutor.

The record in a direct appeal of a criminal case was insufficient for this court
to review the defendant's claims of ineffective assistance of counsel. [685]
A criminal defendant failed to demonstrate that the prosecutor made a
prejudicial misstatement of evidence during closing argument at trial
[685-687]; further, while portions of the prosecutor's closing argument (in
which he asked the jury to decide the case on the basis of emotion and
extraneous factors, and in which he improperly aligned himself with the
jurors) were improper, those errors, standing alone, did not create a
substantial risk of a miscarriage of justice [687-690].

INDICTMENT found and returned in the Superior Court Department on November 17, 2000.

The case was tried before *Christine M. McEvoy,* J.

*Juliane Balliro* for the defendant.

*Kathleen Celio,* Assistant District Attorney (*Mark T. Lee,* Assistant District Attorney, with her) for the Commonwealth.

MILLS, J. After a six-day jury trial on an indictment for murder in the first degree, the defendant was convicted of murder in the second degree on March 3, 2003. On this direct appeal,[1] the defendant complains of (a) ineffective assistance of counsel in four specifics, and (b) denial of a fair and impartial trial because of improprieties in the prosecutor's closing argument. The ineffective claims are (1) counsel's alleged blunders (in several respects) regarding an "expert" on the "handedness" of the assailant; (2) his decision to pursue an argument that the eyewit-

---

[1] A motion for new trial with memorandum and affidavits was filed, and then withdrawn by leave of court on the defendant's motion.

ness's testimony was the product of police coercion; (3) his decision to introduce evidence about the defendant leaving the Commonwealth on the day of the incident; and (4) his failure to object to testimony about "beefs" between youths from two separate housing projects.

1. *Assistance of counsel.* The Commonwealth argues that the defendant's claims of ineffective assistance must fail because the appellate record is insufficient for review of these claims. More specifically, the Commonwealth argues that because the defendant has not pursued a motion for new trial, he has not presented by affidavit or otherwise evidence of trial counsel's reasoning, and without such evidence, the appellate record contains too many gaps for this court's review.

The requirements for proving ineffective assistance of counsel need not be repeated here. See *Commonwealth* v. *Ramos*, 66 Mass. App. Ct. 548, 551 (2006). So it is with the principle that the preferred method for raising a claim of ineffective assistance is through a motion for a new trial. *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006) ("[O]ur courts strongly disfavor raising claims of ineffective assistance [of counsel] on direct appeal"). We agree with the Commonwealth as to the insufficiency of the record in this case to review the defendant's claims in this regard, and we decline to do so in the context of this direct appeal.

2. *Closing argument.* As to closing argument, the defendant claims that the prosecutor improperly referred to facts not in evidence, that he attempted to inflame and prejudice the jury, and that he urged the jury to consider extraneous factors.

a. *Facts not in evidence.* The fifteen year old victim died as the result of a stab wound. The victim's friend, McDuffie, was walking with the victim when a man (whose face McDuffie saw, but had otherwise never seen before) with a "nappy afro" and a red shirt and jeans, pulled a knife, took a single step forward, and stabbed the victim in the chest. McDuffie saw the assailant for a few seconds in light, which McDuffie described as bright. He identified the defendant, in court, as the assailant.

Boston police Officer Carl Shorter, working an early morning shift on August 5, 2000, heard a radio transmission and after about two minutes arrived at a building at 267 Center Street in

the Jackson Square area of Boston. Officer Shorter testified that he saw two individuals, both black males, one wearing a red shirt, and the other a black and grey shirt. He could see nothing else about the individuals, such as facial features, although they were staring at him when he left his car. He chased after them as they began to run into the building. He was twenty-five to thirty feet behind them, and was joined by other officers in the pursuit. They attempted to search the building but found no one during this initial search.

Officer Shorter described the lighting up and down Center Street as "well-lit, pretty much, with street lights and lights that come from the building [267 Center Street] as well." He described the lighting conditions as providing clear visibility, with lights on Center Street on both sides.

On cross-examination, the officer was asked: "[W]ould [it] be fair to say that you didn't see [the defendant] running on August the 5th of 2000, right?" The witness answered: "I did not." The witness confirmed that his report contained, by way of description of the individuals, simply "[j]ust two black males." There was nothing about a male having braids, or a black male with an "afro."

On the basis of Officer Shorter's testimony, the defendant's attorney argued during closing:

> "And Officer Shorter testified that Jovan was not one of the two men that he saw standing there. According to Officer Shorter, Jovan was not dressed in a red shirt, and Jovan was not the man dressed in a grey and black shirt. That should end our discussion here."

On the basis of the same testimony, the prosecutor argued in closing (over the defendant's objection):

> "Officer Shorter didn't come in here and tell you that it wasn't [the defendant] that ran into the building. He said he didn't know who ran into the building. . . . Did you hear Officer Shorter tell you, during this trial, that the defendant specifically was not the one that ran into the building?"

The defendant asserts that Officer Shorter's actual testimony

was utterly different than argued by the prosecutor, who completely misstated crucial testimony regarding a police identification, improperly implying that the defendant was spotted in the area nearby and fled from police within minutes of the stabbing. We are not persuaded that there was any "[complete] misstatement of crucial testimony." There was no prejudicial misstatement of evidence, if any misstatement occurred at all.

b. *Other improprieties in the prosecutor's closing.* The defendant makes other complaints that were not preserved by objection, during or after the closing argument. We read these complaints as basically two: (a) improper arguments to inflame the passions of the jury or, perhaps more accurately, asking the jury to decide the case on the basis of emotion and extraneous factors rather than exclusively on the evidence; and (b) the prosecutor's improper alignment of himself with the jurors. We agree that portions of the argument were improper.

There are limits to be observed by prosecutors in closing arguments:.

> "Established rules govern the permissible boundaries of a prosecutor's closing argument. '[A] prosecutor should not refer to the defendant's failure to testify, misstate the evidence or refer to facts not in evidence, interject personal belief in the defendant's guilt, play on racial, ethnic, or religious prejudice or on the jury's sympathy or emotions . . . .' "

*Commonwealth* v. *Delacruz*, 443 Mass. 692, 695 (2005), quoting from *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987). See *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977) (keeping lawyers to a high standard during the persuasion phase of a criminal trial); *Commonwealth* v. *Coren*, 437 Mass. 723, 730 (2002) (prosecutor must "limit the scope of . . . argument[] to facts in evidence and inferences that may be reasonably drawn from the evidence").

The prosecutor urged the jury to take the defendant's trial counsel "to task" because of the way he argued in his closing. Criticisms of the defendant's attorney, including the prosecutor's urging of the jurors to be angry with the attorney, were improper and, among other things, impugned two basic constitutional

rights, that of counsel, as well as the right of a defendant to make his defense. The prosecutor also urged the jurors to be infuriated and angry as a consequence of the testimony of an expert presented by the defense. Additionally, the prosecutor, at least inferentially, urged the jurors to trust the police witnesses because they were police witnesses, and the prosecutor attempted to engender the jurors' anger toward the defendant or his counsel so as to evoke an emotional response, rather than a reasoned intellectual response, to the evidence. These aspects of the argument were improper. See *Commonwealth* v. *Grandison,* 433 Mass. 135, 143 (2001) (improper for the prosecutor to suggest to the jury that it was impermissible for the defendant's attorney to question the veracity of a police officer); *Commonwealth* v. *Vuthy Seng,* 436 Mass. 537, 555-556 (2002) (improper to attempt by argument to engender the jury's anger toward the defendant or his counsel); *Commonwealth* v. *McCoy,* 59 Mass. App. Ct. 284, 296-297 (2003) (improper to argue, or inferentially urge, that the jury trust police witnesses simply because they are police witnesses).

With respect to his claim that the prosecutor improperly aligned himself with the jury and appealed to their sympathies and emotions, the defendant specifies the statement "[w]e need, as people, to get the right person. We need that to close." Upon our own review of the argument several other examples of "alignment" occurred, including: "Why don't we use that evidence? Why do we use conjecture and surmise. . . . Why don't we just use the evidence at trial? . . . [W]e all know he picked out the defendant. . . . Well, we know . . . that they told a couple of different versions of what happened. . . . I think we know that for a fact, based on cross-examination. . . . So we know [about other witnesses]. . . . But there is something we can take from their testimony. . . . I'm going to go you one further. How do we know there wasn't something else? We know it was the defendant because McDuffie made an identification. . . . But if there was any mistake, I didn't see it. We know it was the defendant. How do we know it wasn't somebody else?"

We are troubled by the prosecutor's repeated use of the pronoun "we," which, when considered in light of the substance of some of those statements and phrases, conveyed, at least

inferentially, the prosecutor's belief or opinion about either certain evidence or the credibility of certain witnesses. It was also improper for the prosecutor to blur the boundaries between judge, prosecutor, and jury by placing himself in the jury box as a supplemental or standby juror.[2]

"Having determined that [portions of] the prosecutor's argument [were] improper, we evaluate whether the defendant was prejudiced thereby, considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury." *Commonwealth* v. *Beaudry*, 445 Mass. 577, 584 (2005). It is significant for us to consider whether or not error went to "the very heart of the case." *Commonwealth* v. *Shelley*, 374 Mass. 466, 471 (1978). The absence of objections during or after a closing argument may provide some guidance whether a particular argument was prejudicial in the circumstances, see *Commonwealth* v. *Freeman*, 442 Mass. 779, 786-787 (2004), and the expertise and competence of trial counsel are appropriate for consideration as well.

We conclude that the errors in the prosecutor's closing argument, standing alone, did not create a substantial risk of a miscarriage of justice, which is the standard we apply when, as here, the errors are unpreserved. *Commonwealth* v. *Crouse*, 447 Mass. 558, 576 (2006).

We note, however, that "the cumulative effect of all the errors must be 'considered in the context of the arguments and the case as a whole.' " *Commonwealth* v. *Guy*, 441 Mass. 96, 109 (2004), quoting from *Commonwealth* v. *Maynard*, 436 Mass. 558, 570 (2002). Improper closing argument may be considered, cumulatively, with the effect of other errors, to determine over-all prejudice to a defendant. See *Commonwealth* v. *Rivera*, 62 Mass. App. Ct. 859, 864-865 (2005) (in which there was timely objection to the improper argument).

Although they were unnecessary and regrettable, the errors in

---

[2]The prosecutor, in an additional attack on the lawyer, rather than the evidence, impermissibly inserted himself into the jurors' deliberative process with the statement: "I saw some of your faces during the closing arguments when [the defendant's attorney] mentioned some of the things that he claimed was in evidence. The looks on your faces told me, at the least, that you didn't agree."

the prosecutor's argument are, standing alone, not such as to cause us to disturb judgment.[3]

*Judgment affirmed.*

---

[3]In further proceedings with a proper motion for new trial, and in the event that ineffective assistance is established, the motion judge may consider the error in closing argument in evaluating over-all prejudice to the defendant.