NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

14-P-1826                                          Appeals Court

COMMONWEALTH  vs.  KENDALL T. LODGE.

No. 14-P-1826.

Suffolk.     February 1, 2016. - May 20, 2016.

Present: Trainor, Meade, & Sullivan, JJ.


Firearms. Practice, Criminal, Opening statement, Conduct of
     prosecutor, Argument by prosecutor, Assistance of counsel.
     Constitutional Law, Assistance of counsel, Admissions and
     confessions. Due Process of Law, Assistance of counsel.
     Evidence, Admission by silence.



     Complaint received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on July 29, 2011.

     The case was tried before Robert J. McKenna, Jr., J.


     N. John Magrisso for the defendant.
     Kathryn E. Leary, Assistant District Attorney, for the
Commonwealth.


     MEADE, J.  After a jury trial, the defendant was convicted

of possession of a firearm without a license.  On appeal, he

claims that the prosecutor's opening statement improperly

appealed to emotion without a factual basis, that the

prosecutor's closing argument improperly commented on the defendant's post-Miranda silence, and that he received ineffective assistance of counsel. We affirm.

Background. On July 28, 2011, at approximately 11:45 P.M., Boston police officers responded to a disturbance on Hansborough Street in the Dorchester section of Boston. Upon arriving at Hansborough Street, Officer Robert Robichaud observed a large crowd of approximately forty people standing in the middle of the street yelling at one another. Upon seeing the marked police cruiser, the crowd began to disperse.

At the same time, Officer Keith Monahan responded to the same disturbance in an unmarked police cruiser. As he parked and exited his cruiser, Monahan's attention was immediately drawn to a blue Toyota Corolla automobile moving towards him because the middle passenger in the back seat, later identified as the defendant, was sitting "almost up against the ceiling." Monahan made eye contact with the defendant, who looked "very surprised, [and] wide-eyed." The defendant "immediately turned away, looked down towards his middle leg area and lunged forward very quickly." After making these observations, Monahan told the driver of the Corolla to stop. The driver began to stop; however, once Monahan was within a few feet of the car, the driver accelerated. The driver only stopped when another police cruiser blocked the Corolla's path.

The police ordered the occupants out of the car and to keep their hands up; the defendant remained inside the car and kept his hands out of Monahan's sight. Monahan removed the defendant (an adult), who had been sitting on a child booster seat. Upon his removal, the defendant became agitated and confrontational. After the car had been cleared of occupants, Monahan returned to look in the area where he saw the defendant lunging. There he saw a purse on the floor of the right side of the back seat, with the handle of a firearm protruding from it. The purse contained the license of the front seat passenger. The defendant was arrested and brought to the police station.

At the police station, the defendant was read his Miranda rights, and he signed a form waiving those rights. Detectives Robert Zingg and Patrick Foley then questioned the defendant. The defendant denied that he knew the names of the three other people in the car, and denied knowing where in the car the firearm was located. He went on to state, "[The] only thing I heard about was a firearm and I don't know what it looked like, what type of firearm, I don't know who put it there, I don't know anything about it," and "I have nothing to do with it, I don't even know how it got there."

After maintaining a lack of knowledge of the firearm or its location in the car, the defendant offered various scenarios as to how the firearm could have been placed where it was found.

Each hypothesis offered by the defendant placed the blame on the other occupants of the car or a prior occupant, and each resulted in the firearm being on the floor behind the passenger seat. Prior to the defendant's suggestions, the police had not revealed to him that the firearm had been found on the floor behind the passenger seat.

After speaking to the police for approximately fifty minutes, the defendant grew frustrated by the detectives repeating the same questions. At that point, he stated, "I think we're done," and the interrogation ended a short time later.

Discussion. 1. Prosecutor's opening statement. The defendant claims that the prosecutor's opening statement improperly appealed to emotions without a supporting factual basis in the record. We disagree.

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." Commonwealth v. Staines, 441 Mass. 521, 535 (2004) (citation omitted). In his opening statement, the prosecutor remarked as follows:

> "Guns and firearms, in particular, have been a hot topic over the last few years. Congress, this country as a whole, school shootings, snipers, guns used in self-defense, debate's gotten pretty heated. This here today is not [that] case. This case is about Kendall Lodge . . . . It's about Kendall Lodge breaking the law in the

> Commonwealth of Massachusetts.  And breaking the law by possessing a firearm without [a] proper license."

The defendant did not object, and we review to determine if there was error and, if so, whether that error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

The defendant's argument (and in large part the concurring opinion) simply ignores what the prosecutor actually said.  The prosecutor urged the jury to decide the defendant's case based on the facts they would hear and not on the well-publicized topics of school shootings and the national firearms debate.[1]  The prosecutor then proceeded to outline the facts of the case.  Although not a model for an opening statement, there was no error.  See Commonwealth v. Toolan, 460 Mass. 452, 467 (2011) (jury should decide case based on evidence, be free of bias and prejudice, and be "unswayed by any media publicity" [citation omitted]).  Because there was no error, there was no risk that justice miscarried.[2]

---

[1] Later, the judge instructed the jury along these same lines when he told them:  "You are to be completely fair and impartial.  You are not to be swayed by prejudice or sympathy or by personal likes or dislikes for either side.  Nor are you to allow yourselves to be influenced because the offense charged is popular or unpopular with the public.  You are not to decide this case based on what you may have read or heard outside of this courtroom."

[2] Far from creating the "fearful specter of crimes" conjured in the concurring opinion, post at   , "the lack of an objection

2. <u>Prosecutor's closing argument</u>.  The defendant also claims that the prosecutor improperly commented on the defendant's post-Miranda silence in closing argument.  We disagree.  The defendant's claim centers on the following remarks:

> "If you think you're being charged with a firearm offense, one of the questions you're going to ask is, 'What type of gun was it?  Was it a BB gun, was it a rifle?'  He never questions them as to what type of gun it is because he knows the gun.  He knows it's the revolver because he put it there."

There was no objection to the argument.

In <u>Doyle</u> v. <u>Ohio</u>, 426 U.S. 610, 618 (1976), the United States Supreme Court held that the due process clause of the Fourteenth Amendment to the United States Constitution prohibits impeachment on the basis of a defendant's silence following Miranda warnings.[3]  The Court held that such impeachment was fundamentally unfair because Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him.  <u>Ibid</u>.

by defense counsel is further indication that the remark[s were] not unfairly prejudicial in tone, manner, or substance," <u>Commonwealth</u> v. <u>Oliveira</u>, 74 Mass. App. Ct. 49, 56 (2009).  See <u>Commonwealth</u> v. <u>Toro</u>, 395 Mass. 354, 360 (1985).

[3] The <u>Doyle</u> case involved two defendants who made no postarrest statements about their involvement in the crime. <u>Doyle</u> v. <u>Ohio</u>, <u>supra</u> at 615.  Each testified at trial that he had been framed.  <u>Id</u>. at 612-613.  On cross-examination, the prosecutor asked each defendant why he had not, upon arrest, told the police that he had been framed.  <u>Id</u>. at 613-614.

"The animating concern in Doyle was that a defendant's silence in the wake of receiving the Miranda warnings may be nothing more than an exercise of those rights, which renders his silence 'insolubly ambiguous' on questions of guilt or innocence." Commonwealth v. Sosa, 79 Mass. App. Ct. 106, 112-113 (2011), quoting from Doyle v. Ohio, 426 U.S. at 617. However, "a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." Anderson v. Charles, 447 U.S. 404, 408 (1980).

Here, in contrast to Doyle, the defendant did not remain silent after receiving his Miranda rights. In fact, the defendant spoke to the police for approximately fifty minutes before he invoked his right to remain silent. During his interview, the defendant initially denied knowing anything about the firearm in the car. He told the detective, "I don't know what it looked like, what type of firearm, I don't know who put it there, I don't know anything about it." Despite this claimed lack of knowledge, the defendant offered various scenarios that suggested how the firearm could have ended up in the location where police discovered it, and who may have placed it there.

As set out supra, the prosecutor argued that from the defendant's statements to the police, the jury could infer that

the defendant possessed the firearm and that he knew where he placed it in the car.  Part of that inference was derived from what the defendant chose not to tell the police, i.e., what type of firearm it was.  Those omissions were properly the subject of the prosecutor's closing argument.  Indeed, the "defendant had a constitutional right to silence, not a right to tell a story and then avoid explaining crucial omissions by stating they were an exercise of the right to silence.  The omission of facts from one statement that are contained in another statement is not silence within the meaning of Doyle."  Commonwealth v. Sosa, supra at 113, citing Anderson v. Charles, 447 U.S. at 409.  See Commonwealth v. McClary, 33 Mass. App. Ct. 678, 685-686 (1992), cert. denied, 510 U.S. 975 (1993); Commonwealth v. Donovan, 58 Mass. App. Ct. 631, 636-637 (2003).  Contrary to the defendant's claim, because the defendant waived his right to remain silent, and made a voluntary statement about the firearm, the concerns outlined in Commonwealth v. Haas, 373 Mass. 545, 559-560 (1977) (improper use of postarrest silence), do not apply here.  There was no error, and thus no risk that justice miscarried.[4]

Judgment affirmed.

---

[4] Because there was no error, let alone a substantial risk of a miscarriage of justice, associated with either the prosecutor's opening statement or his closing argument, counsel's failure to object to the prosecutor's remarks cannot form the basis of an ineffective assistance claim.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994); Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 100 (2010).

SULLIVAN, J. (concurring).  I agree with the opinion of the majority except for the question of error in the prosecutor's opening statement.  It is a rule of long standing that the "proper function of an opening [statement] is to outline in a general way the nature of the case which counsel expect to be able to prove or support by evidence.  He should not be allowed to state facts which are irrelevant or for any reason plainly incompetent."  Reporters' Notes to Rule 24, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1605 (LexisNexis 2015), quoting from Posell v. Herscovitz, 237 Mass. 513, 514 (1921).  See Mass. G. Evid. § 1113(a)(1) note, at 411 (2016), citing Commonwealth v. Fazio, 375 Mass. 451, 454 (1978), and Commonwealth v. Croken, 432 Mass. 266, 268 (2000).  The references to school shootings and snipers were references to facts that would not, in any circumstances, be admitted in evidence in this case, and they should not have been made.  Contrast Commonwealth v. Johnson, 429 Mass. 745, 748 (1999).

Alternatively, the remarks were argument.  Argument has no place in an opening statement.  See Mass. G. Evid. § 1113(a)(1) (2016) ("Argument for or against either party is not permitted").  Even if these remarks were made in closing argument, they would constitute an appeal to fear or prejudice, which is likewise prohibited.  See Commonwealth v. Vasquez, 65 Mass. App. Ct. 305, 311 (2005) (reference to church sex abuse

scandal in trial of indecent assault and battery of child under age of fourteen "overstepped the bounds of appropriate advocacy" because it injected "impermissible, inflammatory element into the jury's consideration of the case").

The prosecutor's subsequent disclaimer does not, a fortiori, negate the initial misstep. "Suggestions . . . made, albeit in disclaimer form," may nonetheless "play on the prejudices of the jurors," and thus cause them to stray from a "fair, calm consideration of the evidence." Commonwealth v. Shelley, 374 Mass. 466, 470 (1978). See Commonwealth v. Hogan, 12 Mass. App. Ct. 646, 650 (1981). A reference to snipers and mass murder in an opening statement, followed by a "disclaimer[,] . . . has all the persuasiveness of a pitcher's protestations after bean-balling the lead opposition batter. It could be true, but one might doubt it." Ibid., quoting from Allen v. Snow, 635 F.2d 12, 15 (1st Cir. 1980), cert. denied, 451 U.S. 910 (1981).[1] Even if the opening statement was simply the product of inadvertence or inexperience, it still raised, unnecessarily, the fearful specter of crimes that were not at

---

[1] There had been three previous mistrials. In the immediately preceding trial (the fourth proceeding), the defendant was acquitted of possession of ammunition without a firearm identification card and of carrying a loaded firearm without a license. The jury were deadlocked on the within charge of possession of a firearm without a license. The remarks at issue here, in the fifth proceeding, were not made in the previous trials.

issue, and thus threatened to undermine the jury's function to consider the evidence free from emotion or prejudice.  If this case was not about snipers or school shootings, there was no need to mention them.

However, the balance of the opening statement was proper, and the theme was not repeated, either in the opening statement or the closing argument.[2]  The judge instructed that opening statements are not evidence, and that the jury's decision should not be based on emotion or prejudice.  When considered in the context of the opening as a whole, the evidence at trial, and the judge's instructions, the "prosecutor's needless comment," while error, did not pose a substantial risk of a miscarriage of justice.  Commonwealth v. Mazariego, 474 Mass. 42, 58 (2016).  For that reason, I concur in the judgment.

_____

[2] With respect to the claim of ineffective assistance of counsel, it is far from clear that counsel's performance was constitutionally deficient.  This is particularly so when the case is before us on direct appeal with no record to explain trial counsel's conduct.  See Commonwealth v. Zinser, 446 Mass. 807, 811 (2006).  In any event, the standard for determining a substantial risk of a miscarriage of justice is "essentially the same" as the standard for determining prejudice on an ineffective assistance of counsel claim.  Commonwealth v. LaChance, 469 Mass. 854, 858 (2014).  See Commonwealth v. Carriere, 470 Mass. 1, 19 (2014) ("The absence of an objection at trial may be viewed as 'some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial'" [citation omitted]).