In this appeal the defendant, Carl Larocque, challenges his conviction by a jury of voluntary manslaughter in the shooting death of Kevin Shavies. The defendant contends that the trial judge improperly limited the cross-examination of a prosecution witness. He also contends that he was deprived of a fair trial because of various errors in the prosecutor's closing argument. We affirm.
Discussion. The defendant was arrested months after the shooting when an acquaintance came forward to implicate him. He was charged with murder in the first degree. The Commonwealth's theory of the case was that the defendant "assassinat[ed]" Shavies after a falling out between them. The defendant claimed that Shavies attacked him and that the killing, which no one witnessed other than the defendant and Shavies, was in self-defense.
During the investigation, the defendant gave conflicting stories to the police; at first he denied but ultimately admitted to the shooting. He also testified at trial. Other witnesses (many of whom knew both Shavies and the defendant) were also less than candid with the police during their investigation, but testified at trial. The judge instructed the jury regarding both degrees of murder, self-defense, and the reduction of murder to voluntary manslaughter based on the excessive use of force in self-defense or due to heat of passion upon reasonable provocation or upon sudden combat. The jury returned a verdict of voluntary manslaughter.
1. Cross-examination. The defendant contends that his constitutional right to confront a Commonwealth witness was violated when the trial judge precluded him from questioning her about the effects of her opiate use on her ability to perceive and remember. We review the evidentiary ruling for an abuse of discretion. Commonwealth v. Alcantara, 471 Mass. 550, 564-565 (2015), quoting from Commonwealth v. Carrion, 407 Mass. 263, 273 (1990).
"A witness may 'be impeached by evidence challenging [her] testimonial facilities ....' " Alcantara, supra at 564, quoting from Commonwealth v. Daley, 439 Mass. 558, 564 (2003). "Evidence of a witness's use of legal or illegal drugs is admissible on cross-examination if it would demonstrate an impaired ability by the witness 'to perceive and to remember correctly.' ... However, the party seeking admission of such evidence must show a connection between the drug use and the witness's ability to perceive, remember, or testify to the event in question." Alcantara, supra at 565, quoting from Carrion, supra at 273-274.
After a voir dire of the witness, the judge found that she was taking prescribed methadone around the time of the offense. The judge credited her testimony that she was able to "think clearly and rationally" when taking the methadone. By the time of trial she was taking prescribed Suboxone. The trial judge found that these prescription opiates did not "affect her ability to perceive or to remember what she perceives." The defendant did not offer any evidence to show that these drugs would have interfered with the witness's abilities to observe or recall. Alcantara, supra at 565. "Thus, the defendant failed to establish the requisite nexus between [her] ... [opiate] use and any possible impairment." Ibid. The judge did not abuse his discretion in limiting the cross-examination.
2. Closing argument. The defendant contends that he was deprived of a fair trial because the prosecutor's closing argument (1) improperly shifted the burden of proof from the Commonwealth to the defendant; (2) misstated the testimony of the medical examiner; (3) referred to excluded testimony; and (4) appealed to the jury's sympathy.
a. Burden shifting. "[A] prosecutor shifts the burden of proof when, for example, he or she calls the jury's attention to the defendant's failure to call a witness or witnesses, or when the prosecutor offers 'direct comment on a defendant's failure to contradict testimony.' " Commonwealth v. Tu Trinh, 458 Mass. 776, 787 (2011), quoting from Commonwealth v. Miranda, 458 Mass. 100, 117 (2010). "In each case, the prosecution is signaling to the jury that the defendant has an affirmative duty to bring forth evidence of his innocence, thereby lessening the Commonwealth's burden to prove every element of a crime. In contrast, it is not improper per se for a prosecutor to point out to the jury that cross-examination did not produce factual inconsistencies in the testimony of prosecution witnesses, even if such remarks imply that the defendant left material elements of the Commonwealth's evidence uncontested." Tu Trinh, supra at 787-788. Here we have reviewed the closing argument in its entirety and conclude that the prosecutor's statements, when viewed in context, "fell into the permissible area of comments highlighting corroboration of credibility and consistency and did not cross over into burden shifting." Id. at 788.
For example, the defendant maintains that the prosecutor shifted the burden by stating "[t]he corroboration from what the defendant told you is nonexistent." Viewed in the context of the complete statement to the jury, the prosecutor argued that there was corroboration for the prosecution witness's version of events but not the defendant's.[2] "A prosecutor ... 'is entitled to emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case.' " Commonwealth v. Cassidy, 470 Mass. 201, 226 (2014), quoting from Commonwealth v. Feroli, 407 Mass. 405, 409 (1990).
Nor did the prosecutor shift the burden to the defendant by stating, "[n]o one told you [the defendant] was in a rage except for the defendant, the man on trial, the man who told you he lied to the police because he was afraid of going to jail." The first portion of the sentence is not to be viewed in isolation. In context, it is permissible argument intended to cast doubt on the truthfulness of the defendant's testimony by reminding jurors of another occasion in the evidence at trial when the defendant was untruthful.
The defendant also suggests that the prosecutor's statement that the defendant "ha[d] to explain why he was arrested" called upon the defendant to prove his innocence. However, the full text of the prosecutor's remarks[3] shows that the prosecutor was referring to weaknesses and inconsistencies in the defendant's statements to the police, statements which the prosecutor urged the jury to find were false.
Finally, the defendant takes exception to the prosecutor's argument regarding the defendant's lack of explanation of telephone calls he made before and after the killing.[4] The defendant voluntarily spoke to the police on a number of occasions, and testified at trial. The prosecutor was permitted to challenge the credibility of the story the defendant told the police by pointing to omissions which, the prosecutor argued, were strategically designed to mislead the police.[5] See Commonwealth v. Johnson, 463 Mass. 95, 112-113 (2012) ; Commonwealth v. Mendez, 476 Mass. 512, 521-522 (2017). Cf. Commonwealth v. Donovan, 58 Mass. App. Ct. 631, 640 (2003) ("In sum, in this context, based on the evidence at trial, it was reasonable for the prosecutor to infer and argue that the defendant's statements to the police, and the omissions therefrom, were false and misleading and therefore evidence of consciousness of guilt"); Commonwealth v. Lodge, 89 Mass. App. Ct. 415, 419 (2016) (the "defendant had a constitutional right to silence, not a right to tell a story and then avoid explaining crucial omissions by stating they were an exercise of the right to silence" [quotation omitted] ).
b. Misstated testimony. During closing arguments, the prosecutor said, "The defendant shoots him in the head. Shoots him with that trajectory that I believe Dr. Springer [the medical examiner] testified was straight down or straight through, left to right." The medical examiner did not testify that the shot went straight down, but did testify that the shot went straight through, left to right. The defendant timely objected to the prosecutor's remark and we review the claim for prejudicial error. Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 233 (2016).
"Remarks made during closing arguments are considered in context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Andrade, 468 Mass. 543, 552 (2014) (quotation omitted). Here, it appears that the prosecutor corrected his error regarding the medical examiner's testimony. Even if there was error, the error was not prejudicial because (1) the trial judge had previously instructed the jury that closing arguments are not evidence and that "if [their] memory of the evidence differs from the version stated in the closing arguments, [they] should follow [their] own recollections"; and (2) after a sidebar following the objection, the judge also gave a general curative instruction that although "the attorneys are allowed to argue to you what they suggest the evidence was ... [i]t is up to you ultimately to determine what the evidence showed."[6] "These instructions, to which we presume the jury adhered, see Commonwealth v. Amirault, [404 Mass. 221, 240 (1989) ], effectively neutralized any prejudice produced by the prosecutor's [error]." Johnson, 463 Mass. at 114.
c. Excluded testimony. Of greater concern is the prosecutor's reference to excluded testimony during closing argument. At trial the prosecutor sought to introduce expert testimony that the first gunshot struck Shavies in the mouth, that Shavies fell to the ground, and that the defendant then fired the fatal shot to the head. This evidence went to the Commonwealth's theory of the case, namely that the defendant had "assassinat[ed]" the victim, and was also offered to disprove self-defense.
The judge excluded the evidence on the basis that the prosecutor had failed to provide adequate expert disclosures or expert reports as to the sequence of shots and Shavies's body position. Nonetheless, the prosecutor argued in his closing that the first shot was to the mouth, and that Shavies was then shot in the head after he fell to the ground. "Look at the blood flow from those wounds," the prosecutor said; "[w]hile Kevin Shavies is on the ground, what happens? The defendant shoots him in the head."
The Commonwealth argues that it was permissible for the jury to draw an inference that Shavies was shot in the head after falling to the ground by examining photographic exhibits depicting the direction of blood flow from his wounds, and that the argument was, therefore, grounded in the evidence. The prosecutor's argument was improper. The evidence concerning blood flow came from the Commonwealth's expert, who testified that the sideways flow of the blood meant that Shavies bled while he was on the ground. But the same expert stated, "That doesn't mean anything beyond that, just that-sometimes injuries do take a second or two to start bleeding." Thus, the record evidence, propounded by the Commonwealth's own witness, expressly disclaimed the theory espoused in the closing argument.[7]
The parties agree that the error is unpreserved. We review for a substantial risk of miscarriage of justice. Commonwealth v. Azar, 435 Mass. 675, 685, 687 (2002). The jury were instructed, immediately after the arguments and before general jury instructions were given, to rely on their memory of the evidence and not the arguments of counsel. The jury's acquittal on the murder charge demonstrates a clear rejection of the assassination theory of the case. Although the reference to excluded evidence should not have been made, the acquittal of the murder charge and "the good sense of the jurors saved [the] prosecutor from the consequences of his own folly." Commonwealth v. Grimshaw, 412 Mass. 505, 515 (1992) (Tauro, J., concurring).
Nor has the defendant clearly articulated how the absence of the offending reference would have resulted in a full acquittal. The shots were fired at close range-a few inches to a few feet. There was a great deal of conflicting evidence from both sides regarding the relationship between the two men, who had been friends but were also affiliated with rival gangs. The jury had this information in hand when they considered whether the shooting was the product of heat of passion or the excessive use of force in self-defense. Accordingly, we cannot say that "we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Proulx, 61 Mass. App. Ct. 454, 461 (2004) (quotation omitted).
d. Appeal to sympathy. In the final moments of closing argument, the prosecutor made an emotional appeal to the jury's sympathy by referring to Shavies's age, his loss of "everything he could have been," and his relationship with his family. "The prosecutor is entitled to 'tell the jury something of the person whose life [has] been lost in order to humanize the proceedings.' " Commonwealth v. Rodriguez, 437 Mass. 554, 566 (2002), quoting from Commonwealth v. Degro, 432 Mass. 319, 323 (2000). While the prosecutor exceeded this boundary, there was no objection, and we discern no substantial risk of miscarriage of justice where the trial judge shortly thereafter instructed the jury that they should not be "swayed by prejudice or by sympathy." Cf. Commonwealth v. Camacho, 472 Mass. 587, 608-609 (2015) ; Commonwealth v. Chukwuezi, 475 Mass. 597, 609 (2016).
Judgment affirmed.

The prosecutor argued,
"The corroboration that exists from what Roberto and Jamee [two Commonwealth witnesses] told you is ample. The corroboration from what the defendant told you is nonexistent. His statements were the statements of an overactive imagination from a guy who plays too many video games, who's trapped and needs to tell you guys something to get out of it; a man who told you he lies to get out of trouble."

"But the defendant has to say that's what that milk was for, because he has to explain why he's arrested-or why he goes to the park that day and has that bag."

"You didn't hear him explain what those calls were about at all, ladies and gentlemen; just that they existed. And he lied to the police for seven months. And he kept lying for four and a half years, ladies and gentlemen. He sat there and he lied."

"Why wouldn't the defendant tell the police he also spoke to Roberto? I think the answer's pretty clear. Roberto knew everything that the defendant knew, and you heard that from the defendant's own mouth: You know everything I know. He didn't want the police speaking to Roberto. But they did."

Defense counsel requested a special curative instruction, but ultimately agreed that the judge could give the general curative instruction.

We further observe that bloodstain analysis is typically a matter of expert opinion and not lay inference, see generally Commonwealth v. Powell, 450 Mass. 229, 237-241 (2007) ; Commonwealth v. Vasquez, 462 Mass. 827, 844-846 (2012), as is the sequence of shots based on blood flow or amount, see Commonwealth v. Whipple, 377 Mass. 709, 714 (1979), and the position of a body based on medical examination, see Commonwealth v. Fournier, 372 Mass. 346, 349-350 (1977).