A Superior Court jury convicted the defendant, Juan Calcano, of trafficking in an opium derivative in violation of G. L. c. 94C, § 32E. We affirm.
1. Motion to suppress. a. Facts. We summarize the facts from the motion judge's findings, supplemented by uncontroverted testimony submitted during the evidentiary hearing on the motion to suppress. On March, 26, 2012, Massachusetts State police Trooper Shawn Maher was on stationary patrol with Fionn, a canine certified in the detection of narcotics, on Interstate Route 84 in Sturbridge when Maher noticed a vehicle with what he believed to be an impermissible degree of window tint.[2] Maher signaled to the driver of the vehicle to pull over and he did so. Maher approached the vehicle from the passenger side, asked the defendant for his license and the vehicle's registration, and advised the defendant as to the reason for the stop. The defendant produced a valid driver's license, but could not locate the vehicle's registration. The defendant told Maher that he borrowed the car from a friend named Arturo, that Arturo was not the registered owner, and that he did not know Arturo's last name or the full name of the registered owner. While attempting to locate the registration, the defendant opened the glove compartment and Maher noted in it two air fresheners and a few loose screws.
Maher returned to his cruiser to check the vehicle information and request assistance. While at his cruiser, Maher observed the defendant twice bend over and disappear from view, giving Maher a safety concern. Lieutenant Philip Dowd arrived within minutes of Maher's request and the two returned to the defendant's vehicle. The troopers observed that the defendant was speaking on a cellular telephone. Maher asked the defendant to end the conversation, which the defendant did promptly. The defendant stated that he was speaking with "Edwin," the same person whom he previously identified as Arturo, and that he learned that Elvis Pineyro was the registered owner of the vehicle.
The defendant requested that Maher issue a warning for the excessive tint. Maher instead returned to his cruiser to confirm the information about Pineyro, while Dowd remained at the defendant's vehicle. Dowd engaged the defendant in conversation and asked if the defendant had any luggage associated with the trip with him. The defendant said he did. Dowd looked into the rear of the vehicle and saw no luggage, at which time the defendant stated that in fact he did not have luggage, but that he had personal items in New York.
Maher confirmed the registration information and returned to the defendant's vehicle. Dowd then informed Maher that Dowd had observed two loose screws in the vehicle's glove box, a strong odor of air freshener emanating from the vehicle, and a crease in the dashboard consistent with the use of a hidden compartment as an aftermarket addition to a vehicle.
Based on Dowd's information and Maher's own observations, Maher asked the defendant if there was anything illegal in the vehicle. The defendant responded that there was not and that "you can check." Maher then asked if he could search the vehicle, to which the defendant said yes. The defendant was asked to, and did, exit the vehicle.
Maher began the search by walking Fionn around the exterior of the vehicle. Fionn alerted on the driver and front passenger doors and then jumped into the vehicle, and alerted at the center console. The troopers identified an aftermarket compartment located where the center console met the dashboard, opened it, and recovered a plastic bag containing smaller plastic bags with "some 810 pills."
b. Discussion. The defendant contends that the motion judge erred in denying his motion to suppress. The defendant does not challenge the initial vehicle stop or Maher's inquiry to determine the registered owner of the vehicle, but rather argues that the troopers impermissibly prolonged the stop rather than ticketing the defendant and allowing him to leave once Maher had confirmed the vehicle's registration information.
"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Scott, 440 Mass. 642, 646 (2004) (quotation omitted). We "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Ibid. (quotation omitted).
"A routine traffic stop may not last longer than 'reasonably necessary to effectuate the purpose of the stop.' " Commonwealth v. Cordero, 477 Mass. 237, 241 (2017), quoting from Commonwealth v. Amado, 474 Mass. 147, 151 (2016). "Police authority to seize an individual ends 'when tasks tied to the traffic infraction are-or reasonably should have been-completed.' " Cordero, supra. at 242, quoting from Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015). An officer may "expand a threshold inquiry of a motorist and prolong his detention" when there is a reasonable suspicion of criminal activity. Cordero, supra at 243, quoting from Commonwealth v. Feyenord, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006).
Here, at the point when Maher confirmed both the defendant's license and the vehicle's registration information, there was sufficient reasonable suspicion to continue the stop based on Maher and Dowd's observations. The defendant had initially offered incomplete and inconsistent information to identify from whom he borrowed the vehicle (Arturo, also called Edwin) and who owned it. Maher and Dowd also both observed loose screws and saw or smelled air fresheners. Significantly, Dowd, "who developed a specialty in regard to hidden compartments in motor vehicles," observed a crease in the dashboard. These factors cumulatively provided sufficient reasonable suspicion, and the troopers prolonged the stop proportionally to the escalating suspicion. See Commonwealth v. Sinforoso, 434 Mass. 320, 324 (2001) (nonstandard switch under dashboard indicated vehicle may have secret compartment); Commonwealth v. Watts, 74 Mass. App. Ct. 514, 519 (2009) (reasonable suspicion based in part on laundry dryer sheets which may mask odor), overruled on other grounds, Commonwealth v. Campbell, 475 Mass. 611, 617 n.9 (2016).[3]
2. Trial. a. Prosecutor's statements. The defendant challenges several of the prosecutor's remarks made during his opening statement and closing argument, arguing that they caused a substantial risk of a miscarriage of justice. "Remarks made during closing arguments are considered in context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Durand, 475 Mass. 657, 670 (2016) (quotation omitted).
The defendant contends that the prosecutor improperly commented on the defendant's silence when arguing that the defendant, after being advised of his Miranda rights and that troopers identified the hidden compartment, displayed "no shock, no dismay, no disbelief on that man's face. All he said was he was cold and he would like to sit in a cruiser to stay warm." The defendant had filed a motion in limine to exclude testimony that he also had requested an attorney.[4] The jury heard no evidence about the defendant's request for counsel and the prosecutor made no direct reference to it in closing argument. As the defendant did not remain silent after having received his Miranda warnings, the prosecutor was permitted to use the statement. See Commonwealth v. Lodge, 89 Mass. App. Ct. 415, 418-419 (2016) ("[A] defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all"). Instead of a comment on the defendant's right to remain silent, the testimony and the prosecutor's argument[5] served only to imply that the defendant's statement showed his knowledge of the contents of the hidden compartment. Commonwealth v. Christian, 430 Mass. 552, 555 (2000).
The defendant also challenges the prosecutor's suggestion that the defendant was a high-ranking member of a drug organization, the use of an analogy, and the suggestion that the defendant only consented to the vehicle search because he did not know that it would involve a canine, and argues that the prosecutor shifted the burden of proof. In context of the entire argument, evidence at trial, and the judge's instructions, we discern no substantial risk of a miscarriage of justice in these statements.
b. Sufficiency. We turn next to the defendant's contention that there was insufficient evidence for the jury to find him guilty of trafficking. We review the evidence in the light most favorable to the Commonwealth and draw all inferences in the Commonwealth's favor as required by Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).[6] A drug trafficking conviction under G. L. c. 94C, § 32E, requires proof that the defendant knowingly or intentionally possessed, either actually or constructively, and intended to distribute a specific amount of the controlled substance.[7] See Commonwealth v. Roman, 414 Mass. 642, 643-644 (1993). To prove constructive possession, the Commonwealth must prove that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" over the contraband. Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). "[T]he Commonwealth may submit a case wholly on circumstantial evidence, and inferences drawn from that evidence need only be reasonable and possible; [they] need not be necessary or inescapable." Commonwealth v. Woods, 466 Mass. 707, 713 (2014) (quotation omitted). "Where conflicting inferences are possible from the evidence, it is for the jury to determine where the truth lies." Ibid. (quotation omitted).
Although the defendant's mere presence in the vehicle, without more, would have been insufficient to support an inference that he constructively possessed the pills, see Commonwealth v. Garcia, 409 Mass. 675, 687-688 (1991), based on additional factors present here, a rational trier of fact could have determined that the defendant constructively possessed the 810 pills recovered in the hidden aftermarket compartment. The defendant told the troopers that the vehicle was not his, but that a friend in Lynn loaned it to him two days prior so that the defendant could visit his grandmother in New York. The defendant was unable to provide the last name of the friend and offered different first names for that friend. Initially, the defendant could not identify the registered owner. The defendant's control of the vehicle for two days supported the inference that the defendant, and not others linked to the vehicle, possessed the contents of the compartment. See Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 444 (2013).
Both Dowd and Maher also testified that they observed multiple air fresheners in the glove compartment. Maher testified that he could smell the air fresheners when standing at the rear of the vehicle, and there was testimony that an abundance of air fresheners are used to mask an odor of narcotics to avoid human or canine detection. The jury would be warranted in inferring that the defendant used the air fresheners for that purpose, further supporting the conclusion of constructive possession.
Furthermore, there was sufficient evidence of the defendant's distributive intent. Sergeant James Devlin testified that the pills were a "large amount" consistent with narcotics distribution, rather than an amount that would be prescribed by a physician or consistent with personal drug use. He testified that the packaging was also consistent with distribution and that 810 pills would be valued in excess of $24,000 if sold in a single transaction, and that they could be sold for a greater total amount through smaller transactions. Devlin further testified that aftermarket compartments are typically associated with drug trafficking organizations and not individual drug users, and that organizations commonly register vehicles to individuals other than the person transporting the contraband. Considering this evidence, together with the defendant's inconsistent statements about others linked to the vehicle, his out of view movements, and his inconsistent statements about whether he had luggage during an alleged two-day trip, the jury would be warranted in inferring that the defendant intended to distribute the pills. See Commonwealth v. Sendele, 18 Mass. App. Ct. 755, 758 (1984) (possession of large quantity of narcotics with considerable street value, combined with other factors, raise inference of intent to distribute). We therefore discern no error in the trial judge's denial of the motion for a required finding.
c. Instruction on lesser included offense of possession. The defendant further argues that the trial judge erred when refusing to instruct the jury on the offense of possession.
"As a general rule, the jury should receive an instruction on a particular offense where: (1) the offense is, as a matter of law, a lesser included offense of the crime charged; and (2) the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." Commonwealth v. Souza, 428 Mass. 478, 493-494 (1998) (quotation omitted). A jury instruction on a lesser included offense is not required "unless the proof on the elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." Ibid. (quotation omitted).
The defendant's trial strategy was to deny possession in its entirety; he did not argue, for example, that he possessed the pills only for personal use. He instead argued that he borrowed the vehicle from which the troopers later recovered the pills. However, as discussed, there was ample testimony that the 810 oxycodone pills were consistent with trafficking rather than personal use. Defense counsel did not attempt to discredit Devlin's testimony to this conclusion.[8] This left no rational basis for the jury to conclude that the defendant simply possessed the pills. We therefore conclude that the trial judge did not err in declining to instruct the jury on simple possession.
Judgment affirmed.

The windows were later tested and determined to have an excessive tint.

As we conclude that the troopers had reasonable suspicion to prolong the stop, we need not address the defendant's argument that his subsequent consent to search the vehicle was invalid. Nevertheless, we discern no error in the motion judge's conclusion that the defendant voluntarily consented to the search. See Commonwealth v. Buckley, 478 Mass. 861, 875-876 (2018).

The trial record does not indicate exactly when the defendant requested an attorney. The testimony from the motion to suppress hearing indicates that the defendant requested an attorney after he asked to sit in the cruiser.

To the extent the prosecutor argued that the defendant, when told of the hidden compartment expressed "no shock, no dismay, no disbelief on that man's face," it was not supported by any testimony in the record and was not permissible. Nonetheless, we discern no substantial risk of a miscarriage of justice.

The evidence at trial was not identical to the evidence presented at hearing on the motion to suppress. Our assessment of the sufficiency is based on the evidence actually admitted at trial.

The defendant was indicted in June, 2012, of trafficking in twenty-eight grams or more, but less than 100 grams, of opium or any derivative thereof, in violation of G. L. c. 94C, § 32E(c )(2). The statute was subsequently amended (St. 2012, c. 192, § 25, effective August 2, 2012) and now provides a range of thirty-six grams or more, but less than 100 grams. The defendant stipulated at trial that the contraband recovered contained oxycodone, a derivative of opium and a class B controlled substance, and that the total weight of the 810 pills was 81.2 grams. He does not challenge the sufficiency of the evidence on this element.

Defense counsel did cross-examine Devlin on his testimony that someone traveling from Lynn to New York might be engaged in trafficking, and inquired about other evidence that may be present if someone is trafficking narcotics.